UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CANDY R.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

**DECISION AND ORDER**

6:23-cv-06608-EAW

# INTRODUCTION

Represented by counsel, Plaintiff Candy R. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[1] (Dkt. 6; Dkt. 8). For the reasons discussed below, Plaintiff's motion (Dkt. 6) is denied and the Commissioner's motion (Dkt. 8) is granted.

---

[1] Plaintiff filed her motion as "Plaintiff's Memorandum/Brief" rather than a motion, but the Court will treat it as Plaintiff's motion for judgment on the pleadings. (Dkt. 6).

- 1 -

## BACKGROUND

Plaintiff protectively filed her application for DIB on October 6, 2020.[2] (Dkt. 3 at 97, 113, 139, 294). In her application, Plaintiff alleged disability beginning April 1, 2019. (*Id*. at 96, 115, 294). Plaintiff's application was initially denied on June 8, 2021, and then denied upon reconsideration on August 23, 2021. (*Id*. at 96-39). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Matthew G. Levin on October 4, 2022. (*Id*. at 52-70). On November 7, 2022, the ALJ issued an unfavorable decision denying Plaintiff's claim. (*Id.* at 34-46). Plaintiff then requested review by the Appeals Council, which the Council denied on September 7, 2023, making the ALJ's determination the final decision of the Commissioner. (*Id*. at 6-11).

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

---

[2] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Hum. Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**II.     Disability Determination**

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1529), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e). The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

**DISCUSSION**

I. **The ALJ's Decision**

In deciding whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation analysis set forth in 20 C.F.R. § 404.1520 and determined that Plaintiff met the insured status requirements of the Act through December 31, 2022. (Dkt. 3 at 36). At step one of the analysis, the ALJ opined that Plaintiff had not engaged in substantial gainful work activity since April 1, 2019, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from several severe impairments: degenerative disc disease of the spine, degenerative joint disease of the knees, asthma, bipolar disorder, and post-traumatic stress disorder ("PTSD"). (*Id.*). He also determined that Plaintiff's insomnia, constipation, acute sinusitis, hypothyroidism, dyshidrosis, obesity, and a pancreatic cyst were nonsevere impairments. (*Id.* at 37).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 37-39). Before proceeding to step four, the ALJ concluded that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with additional limitations. (*Id.* at 39). The ALJ determined that Plaintiff could understand, remember, and carry out simple instructions and maintain concentration, persistence, and pace for two-hour blocks of time over an eight-hour workday and forty-hour workweek. (*Id.*). He further opined that Plaintiff could sustain brief and superficial social interaction with the

general public, accept criticism from supervisors, adapt to simple changes in the work routine, but should avoid tandem work, teamwork with co-workers, and concentrated exposure to cold temperatures, fumes, odors, gas, dust, and poor ventilation.  (*Id*.).

At step four, the ALJ found that Plaintiff was able to perform her past relevant work as a small products I assembler.  (*Id.* at 45).  As a result, the ALJ concluded that Plaintiff was not disabled from the alleged onset date of April 1, 2019, through the date of his decision.  (*Id*.).

## II.     **The ALJ Determination is Supported by Substantial Evidence.**

Plaintiff argues that the ALJ erred in evaluating medical opinions of Jeanne Shapiro, Ph.D. ("Dr. Shapiro") and Elke Lorensen, M.D. ("Dr. Lorensen") by failing to properly articulate how he considered the persuasiveness of their opinions and in evaluating her subjective complaints in his analysis.  (Dkt. 6 at 8-16).  For the reasons discussed below, the Court finds Plaintiff's arguments without merit.

Under the amendments to the social security regulations related to the evaluation of medical evidence for disability claims filed after March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources."  20 C.F.R. § 404.1520c(a).  The amended regulations now require the ALJ to articulate how persuasive he finds all of the medical opinions and prior administrative medical findings contained in the record based on five factors, with the two most important

factors being supportability and consistency. 20 C.F.R. § 404.1520c(c); *see also Peets v. Kijakazi*, No. 21-3150, 2022 WL 17725391, at *1 (2d Cir. Dec. 16, 2022) (under the new regulations, the ALJ's declining to "afford controlling weight to a particular medical opinion is not a basis for second-guessing the ALJ's conclusions").

"Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021) (internal citation omitted). Specifically, the ALJ must explain how he considered the supportability and consistency factors, and may, but is not required to, consider the three remaining factors. 20 C.F.R. § 404.1520c(b)(2). Although the ALJ's failure to adequately explain how he considered the supportability and consistency of a medical opinion constitutes procedural error, it does not always lead to a reversal of the ALJ's finding if "a searching review of the record assures [the court] 'that the substance of the [regulation] was not traversed.'" *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (internal citation and quotation marks omitted)).

Here, Plaintiff argues that even though the ALJ considered the supportability and consistency factors in his analysis of Drs. Shapiro and Lorensen's opinions and found them "generally persuasive" and "somewhat persuasive" in his decision, he, nevertheless, failed

to explain *how* he considered both factors in his assessment of each opinion. (Dkt. 6 at 9-13; Dkt. 9 at 2-3). Plaintiff submits that the ALJ's cursory reference to her in-person examination and longitudinal treatment records was insufficient to satisfy the persuasiveness analysis required by the regulations and made it unclear why he included a more restrictive limitation, which Dr. Shapiro did not opine about, while at the same time excluding a more restrictive limitation identified by Dr. Lorensen. (*Id*.).

The Court disagrees. While failure to adequately explain how the ALJ considered the supportability and consistency of medical opinions constitutes procedural error, as long as "'a searching review of the record' assures [the court] 'that the substance of the [regulation] was not traversed,'" any error in not considering the supportability and consistency factors is harmless. *Loucks*, 2022 WL 2189293, at *2 (citations omitted); *see also Ricky L. v. Comm'r of Soc. Sec.*, No. 20-CV-7102-FPG, 2022 WL 2306965, at *4 (W.D.N.Y. June 27, 2022) ("[I]nsofar as the [c]ourt can adequately 'glean' how the ALJ weighed the consistency and supportability factors for Dr. Sandler's opinion, . . . the [c]ourt finds that the ALJ's procedural error harmless as 'the substance of the [regulation] was not traversed.'" (quotations omitted)).

This is not a case where the ALJ failed to consider either factor in his analysis altogether or provided no explanation when he considered the persuasiveness of each opinion. *Cf. Frank R. v. Comm'r of Soc. Sec.*, No. 21-CV-6145MWP, 2023 WL 5162664, at *7 (W.D.N.Y. Aug. 11, 2023) ("[T]he ALJ's evaluation of the opinion evidence [wa]s

entirely conclusory, stating merely that he found opinions persuasive because they were 'consistent with the medical evidence of record,' without further discussion."); *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at *14 (S.D.N.Y. Jan. 29, 2021), *adopted*, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022) (The ALJ failed to consider the supportability factor because "[n]owhere in the ALJ's decision does she explain, as the new regulations require, what the respective CEs' used to support their opinions and reach their ultimate conclusions."). Instead, the ALJ found Dr. Lorensen's opinion "somewhat persuasive" and Dr. Shapiro's opinion "generally persuasive" because they were supported by an in-person examination of Plaintiff and were consistent with longitudinal medical evidence and Plaintiff's reported activity level. (Dkt. 3 at 42-43). Prior to making his persuasiveness determination, the ALJ analyzed each physician's specific physical and mental findings reached during their examination and noted their ultimate conclusions regarding the degree of Plaintiff's limitations. (*Id*.). The ALJ went on to discuss specific objective findings related to Plaintiff's mental and physical impairments in the other portions of his opinion, as well as Plaintiff's activities, both of which provided enough support for his persuasiveness analysis of each physician's opinions. (Dkt. 3 at 41-44); *see Porteus v. O'Malley*, No. 23-969, 2024 WL 2180203, at *2 (2d Cir. May 15, 2024) (no error to explicitly repeat his prior examination of the record when the ALJ adequately explained that the medical opinions were supported by plaintiff's mental status examinations summarized in the decision and were consistent with plaintiff's

treatment notes, hearing testimony, and evidence of his daily activities that were set forth earlier in the ALJ's decision).

Plaintiff also takes issue with the ALJ's inclusion in the RFC of her ability to accept criticism from supervisors and perform work in two-hour blocks of time when Dr. Shapiro opined that she had moderate limitations in regulating emotions, controlling behavior, and maintaining well-being. (Dkt. 6 at 10-11; Dkt. 9 at 2). The Court finds this argument unavailing because it disregards the fact that the RFC is an administrative and not a medical finding that is to be formed based on an ALJ's review of the entire record and not just by following one particular opinion. In fact, the ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole," *Matta v. Astrue*, 508 F. App'x 53, 53 (2d Cir. 2013), and may reach a determination that "does not perfectly correspond with any of the opinions of medical sources," provided that the ALJ's overall assessment is supported by substantial evidence and consistent with applicable law. *Trepanier v. Comm'r of SSA*, 752 F. App'x. 75, 79 (2d Cir. 2018). For that reason, the ALJ did not err in including the limitations related to accepting criticism from supervisors and working in two-hour blocks of time when Dr. Shapiro did not explicitly opine on these limitations. The RFC was consistent with Dr. Shapiro's opinion that Plaintiff had mild limitations in interacting with supervisors, co-workers, and the public, performing at a consistent pace, sustaining concentration, ordinary routine, and regular attendance, and moderate limitations in regulating emotions, controlling behavior, and maintaining well-

being because the ALJ limited Plaintiff to understanding, remembering, and carrying out of simple instructions, sustaining a brief and superficial interaction with the general public, avoiding tandem tasks and teamwork with co-workers, accepting criticism from supervisors, and adapting to simple changes in the work routine. *See e.g.*, *Rushford v. Kijakazi*, No. 23-317, 2023 WL 8946622, at *2 (2d Cir. Dec. 28, 2023) (moderate limitations did not prevent plaintiff from engaging in unskilled, simple, and routine tasks); *Matta*, 508 F. App'x at 55 (moderate difficulties in social functioning were consistent with the finding that plaintiff was capable of simple, routine, and unskilled work with no more than minimal contact with co-workers, supervisors, and the general public); *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010) (moderate limitations in activities of daily living and social functioning were not inconsistent with plaintiff's ability to perform unskilled work, carry out simple instructions, deal with work changes, and respond to supervision).

The ALJ's inclusion of Plaintiff's ability to accept criticism from supervisors and work in two-hour blocks was not inconsistent with Dr. Shapiro's opinion because Dr. Shapiro determined that Plaintiff only had mild limitations in interacting adequately with supervisors and in sustaining an ordinary routine, concentration, and performing a task at a consistent pace. If anything, the ALJ's finding regarding Plaintiff maintaining her pace for two hours was more restrictive than was opined by Dr. Shapiro. Moreover, such a determination was consistent with the opinion of the State Agency physician A. Chapman, Ph.D., who, upon review of Plaintiff's record, concluded that Plaintiff was moderately

limited in her ability to respond appropriately to criticism and maintain attention and concentration for extended periods of time.  (Dkt. 3 at 131-33); *see Nathan P. v. Comm'r of Soc. Sec.*, No. 19-CV-954Sr, 2021 WL 1139849, at *5 (W.D.N.Y. Mar. 25, 2021) ("a moderate limitation in a plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors is consistent with an RFC limiting plaintiff to unskilled work") (collecting cases).  Additionally, the record does not support a conclusion that Plaintiff was unable to sustain employment in which she would accept criticism from supervisors and work for two-hour blocks because there is no evidence in the record that Plaintiff's prior employment was terminated because of her inability to accept criticism or work at that pace.  In fact, Plaintiff indicated that she had stopped working because "she did not want to work anymore . . . [and] because she was too depressed."  (Dkt. 3 at 459, 657).

The Court also does not find an error in the ALJ's assessment of the opinion of Dr. Lorensen and his decision not to include any reaching limitation in Plaintiff's RFC because in making an RFC determination, an ALJ may "choose between properly submitted medical opinions," *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (internal citation omitted), and is free to reject portions of a medical opinion that are not supported by objective evidence of record, while accepting those portions that are supported by the record, *see Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).  Indeed, Dr. Lorensen assessed Plaintiff with moderate limitations in reaching, as well as in bending, lifting, and

carrying, but did not find that Plaintiff had limitations in sitting, standing, walking, or using hands. (Dkt. 3 at 780). Assessing a claimant with moderate limitations in some physical domains does not necessarily translate to a finding of disability. In fact, courts in this Circuit have repeatedly upheld an RFC determination of light work where the claimant has been assessed with moderate limitations. *See e.g.*, *Monserrate B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-700-DB, 2021 WL 2587249, at *4 (W.D.N.Y. June 24, 2021) ("Although Dr. Balderman found Plaintiff had a moderate limitation in reaching, pushing, and pulling, the Second Circuit has noted that moderate limitations do not mandate a finding of disability.") (collecting cases); *Gerry v. Berryhill*, 17-CV-7371 (JS), 2019 WL 955157, at *3 (E.D.N.Y. Feb. 26, 2019) ("Courts within this Circuit have held that opinions of similar 'mild to moderate limitations' support RFC findings that claimants are capable of 'light work.'") (internal citation omitted) (collecting cases); *Gurney v. Colvin*, No. 14-CV-688S, 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016) ("moderate limitations . . . are frequently found to be consistent with an RFC for a full range of light work") (collecting cases).

Additionally, Plaintiff argues that because of Dr. Lorensen's finding of moderate reaching limitation she would not be able to perform the requirements of her past job of a small products assembler I that the ALJ assessed her with, which requires frequent reaching. (Dkt. 6 at 13). The Commissioner submits that the ALJ did not err because moderate limitation in reaching is consistent with frequent reaching required by that job. (Dkt. 8-1 at 14). The Court notes that the Commissioner is only partially correct because

there appears to be a conflict among the courts of this District "on the issue of whether a restriction to performing an activity 'frequently' accommodates a moderate limitation," which this Court recently discussed in *Kimberly J. v. Comm'r of Soc. Sec*, No. 6:23-CV-06090 EAW, 2024 WL 1250229, at *5 (W.D.N.Y. Mar. 25, 2024). Putting aside the conflicting case law, the Court does not find that the ALJ's determination not to include a reaching limitation in Plaintiff's RFC was erroneous.

As previously indicated, "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the court] to glean the rationale of an ALJ's decision." *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (internal quotation marks and citation omitted). Here, the ALJ acknowledged that Plaintiff sought disability for both physical and mental impairments and noted Plaintiff's treatment for degenerative disc disease of her spine and knees, her complaints of back, neck, hip, and knee pain, and opined that while some treatment records demonstrated tenderness, spasms in her back and neck, as well as decreased range of motion of her spine, right trochanter, and left knee, the record also contained objective studies and treatment records of Plaintiff's generally normal physical findings that did not support the degree of the limitation Plaintiff alleged. (Dkt. 3 at 40-41). Indeed, the record reveals that Plaintiff routinely complained of back, knee, neck, and right arm pain, and at times had decreased range of motion in her back and neck, but she often had mostly intact sensation, normal range of motion, and generally normal musculoskeletal and neurological examinations, as

a result of which she was prescribed physical therapy, home exercise program, and analgetic regiment, which admittedly improved her neck and right scapular pain. (Dkt. 3 at 482, 502, 505, 508, 511-12, 574, 578, 581, 799, 808, 812, 814, 816, 820-21, 825, 828, 832, 837, 850-53, 857-60, 867-69, 899-00, 906-07, 1050, 1054, 1058-63). Plaintiff underwent electromyography of her right upper extremity during the relevant period, which demonstrated normal results in 2019 and a C5 radiculopathy with mild denervation in 2020. (*Id*. at 538, 859, 901-02). Plaintiff's physical therapy records showed that despite her complaints of neck and upper arm pain, Plaintiff exhibited normal neck and upper arm mobility, as well as minimally impaired shoulder strength. (*Id*. at 904-05). Plaintiff was educated on symptom centralization and the importance of proper posture while performing activities to avoid aggravation of her symptoms, and was advised to continue with physical therapy several times per week for six weeks. (*Id*. at 904-05). Cervical spine MRI revealed mild multilevel disc disease with mild disc spurs within Plaintiff's cervical spine, but without any evidence of frank central canal stenosis. (*Id*. at 908). When she continued to complain about neck pain that radiated into her right shoulder and arm following conservative treatment that she claimed was unsuccessful at relieving her symptoms, Plaintiff was referred for a spine surgery evaluation. (*Id*. at 909-10). However, the record does not contain any evidence of Plaintiff following through with the evaluation. In March 2022, she returned with complaints of lower back pain, but did not complain of any arm or neck pain at that time. (*Id*. at 1066-69). She was accessed with lumbar

arthropathy and degeneration of lumbar intervertebral disc and was prescribed Tylenol, lower back injections, and home stretches and exercises. (*Id*. at 1070). She subsequently reported a 100% pain relief following the initial injection and then a 75% improvement from the subsequent injection. (*Id*. at 1073, 1083). Following the injections, she did not complain of any neck or right arm pain, had generally normal musculoskeletal examinations with full strength and normal range of motion in her lower extremities, and was recommended to continue with Tylenol and home stretches. (*Id.* at 1085-87). Accordingly, the above findings support the ALJ's RFC determination without a reaching limitation.

Plaintiff's argument that the ALJ erred in the evaluation of her subjective complaints is equally unavailing. She submits that the ALJ mischaracterized her ability to babysit and clean and failed to explain to what degree her abilities to communicate with her family, listen to the radio, and do crafts had on her ability to work. (Dkt. 6 at 14-15). The Court disagrees because "as long as the ALJ provides 'specific reasons' for finding testimony not credible, his 'credibility determination is generally entitled to deference on appeal.'" *McGonagle. v. Kijakazi*, No. 22-637, 2022 WL 17724696, at *1 (2d Cir. Dec. 16, 2022).

Here, consistent with SSR 16-3p and the regulations, the ALJ considered the intensity and persistence of Plaintiff's symptoms and determined the extent they limited her ability to perform work following the two-step process identified by the Commissioner,

where he first determined that Plaintiff suffered from several severe impairments and then analyzed whether they caused any work-related limitations by considering Plaintiff's hearing testimony, statements made by her medical sources, objective studies, reported activities, and treatment records from her mental and physical examinations. *See* SSR 16-3p, 2017 WL 5180304, at *3; 20 C.F.R. § 404.1529(c). While doing so, the ALJ noted Plaintiff's testimony about her chronic pain in the lower back and knees, difficulty lifting, standing, walking, sitting, breathing, concentrating, and completing tasks, as well as some abnormal musculoskeletal findings, depression and other ongoing mental health symptoms. However, the ALJ also relied on Plaintiff's generally normal physical and mental examinations, regular attendance of mental health appointments, and independence in performing various activities to determine that they did not support her subjective complaints. (Dkt. 3 at 40, 43). Specifically, the ALJ noted that Plaintiff's complaints of disabling symptoms were inconsistent with her ability to do laundry and some cleaning, cook, shop, attend to her personal needs, do crafts, listen to the radio, watch television, use social media, care for her dogs, socialize with her family and friends, and babysit her grandson. *See Rushford*, 2023 WL 8946622, at *3 (the ALJ properly considered plaintiff's longitudinal mental health examinations, unremarkable musculoskeletal examinations, conservative treatment, and the ability to perform a variety of activities of daily living to discredit plaintiff's subjective testimony); *McGonagle*, 2022 WL 17724696, at *1 (activities of daily living such as preparing simple meals, driving, playing video games,

attending medical appointments, getting along with providers and staff, spending time with family and friends were considered by the ALJ to find plaintiff's testimony inconsistent with the record).

Plaintiff argues that the ALJ mischaracterized her abilities to perform daily activities independently and did not specify the frequency of her babysitting and caring for her dogs. (Dkt. 6 at 15). However, Plaintiff does not articulate how these activities, even if limited and viewed in the light most favorable to her, would change the RFC determination. Although the ALJ noted Plaintiff's testimony and reports to some medical providers that she needed to take breaks and required assistance of others with some chores, the record demonstrates that she did not share the same sentiment with the other providers, and that she was engaged in various activities that were inconsistent with her complaints of debilitating symptoms, including Plaintiff's babysitting of her grandson up to four days per week. (Dkt. 3 at 35, 43, 58, 660, 730, 732, 778, 788). Accordingly, because an ALJ is free to exercise his discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record, *see Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010), the Court will not second guess the ALJ's determination here and, as such, does not find an error in the ALJ's analysis of Plaintiff's subjective complaints.

Without providing proper support for her arguments, Plaintiff's challenges amount to a disagreement with the ALJ's findings, and while she may disagree with the ALJ's conclusions, it is ultimately Plaintiff's burden to prove a more restrictive RFC than the

RFC assessed by the ALJ. *See Genier*, 606 F.3d at 49 ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." (internal quotation marks omitted)). Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *See Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). For the reasons discussed above, the ALJ reasonably concluded that Plaintiff failed to meet her burden of a more restrictive RFC. As a result, the RFC determination is supported by substantial evidence. Accordingly, there is no basis for the Court to disturb the Commissioner's determination.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 6) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. 8) is granted. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   August 21, 2024
         Rochester, New York